**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| NIL GOVIND DAS , et al. | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION |
| | * | NO. 1:16-CV-1367-LMM |
| BERT BRANTLEY, in his | * | |
| official capacity as Commissioner | * | |
| of the Ga. Dep't of Driver Serv.s, | * | |
| | * | |
| Defendant. | * | |

**DEFENDANT BRANTLEY'S BRIEF IN SUPPORT OF HIS
PRE-ANSWER MOTION TO DISMISS**

COMES NOW Bert Brantley, in his official capacity as Commissioner of the Georgia Department of Driver Services ("DDS"), Defendant in the above styled matter, who is appearing by and through counsel, Samuel S. Olens, Attorney General for the State of Georgia, and makes this his Brief in Support of his Pre-Answer Motion to Dismiss the instant Complaint, as the claims are now moot and Plaintiffs have failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), by showing and stating as follows:

## I. STATEMENT OF RELEVANT FACTS

Plaintiffs allege to be illegal immigrants who were denied driver's licenses from the Georgia Department of Driver Services ("DDS"). Plaintiffs claim they were denied their applications for driver's licenses, on the basis of alienage. Doc. 1, *Complaint*, ¶¶ 1, 3, 164. Plaintiffs claim that DDS's failure to issue licenses to Plaintiffs, because DDS required Plaintiffs to show that they had been lawfully admitted to the United States, violated the Supremacy Clause and the Equal Protection Clause. They seek no redress for the past denials; instead, they seek prospective declaratory and injunctive relief under 42 U.S.C. § 1983 related only to the policy.

The Complaint should be dismissed because this matter is now moot, both as to the claims of the named Plaintiffs, and to the class as defined in the Complaint at paragraph 151. The Department of Driver Services is now processing applications of holders of Employment Authorization Documents classified as (c)(10) and (c)(9) where the applicant can also show documentary proof of a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence, or conditional permanent resident status in the United States. *See Affidavit of Angelique McClendon, attached hereto* (Doc. 9-2).[1]

---

[1] The Court may consider an affidavit and attached documents in ruling on a Pre-Answer Motion to Dismiss without converting the motion to a motion for summary judgment when the attached documents are central to the plaintiff's claim and

Additionally, Plaintiffs have failed to state a claim for violations of the Supremacy Clause and the Equal Protection Clause. The Supremacy clause does not apply here as federal law does not govern the issuance of state licenses, and DDS is not entering the realm of immigration by deciding who may and may not remain in the country. Plaintiffs have failed to state a claim under Equal Protection as they are not members of a suspect class, they have not shown they are similarly situated to all other EAD holders, and they do not have a right to a driver's license; a driver's license is a privilege, not a right. Thus, Plaintiffs' Complaint should be dismissed.

## II. ARGUMENT AND CITATION OF AUTHORITY

A. <u>Plaintiffs' Claims are Moot</u>

Plaintiffs brought suit seeking to obtain driver's licenses from the Georgia Department of Driver Services. Doc. 1. They have obtained the relief sought. On May 13, 2016, plaintiffs Nil Govind Das, Saed Guled, Steffani Mowat, and Victor Escobedo's applications were reviewed by DDS and it was determined that they were eligible for issuance of driver's licenses. *See Affidavit,* Doc. 9-2, ¶ 6. The Attorney General's office, on behalf of DDS, contacted Plaintiffs' counsel and advised that said Plaintiffs were eligible for issuance and the process for obtaining

---

undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005).

those licenses. *Id.* In addition, on May 16, 2016, plaintiffs Rosario Juarez Alegria and Jorge Rosillo Zaragoza submitted copies of documents to counsel for DDS, and their documents are in the process of being reviewed by DDS. *Id.*, at ¶ 7. Should their documents satisfy DDS requirements, they too will be given instructions for issuance of a driver's license. *Id.*

Lastly, on May 17, 2016, DDS affirmed that those Employment Authorization Document holders who also have valid and verifiable documentary evidence issued by Department of Homeland Security indicating that they have a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence, or conditional permanent resident status in the United States are eligible for licenses and will be contacted regarding the process for issuance after their applications are submitted and verified through SAVE. *Affidavit,* Doc. 9-2, ¶ 9. As such, Plaintiffs' claims, both individual and on behalf of the named class, are now moot. "The mootness doctrine usually requires a court to dismiss an action in which, because of events occurring after the plaintiff filed the suit, any relief the court might grant would be of no utility to the plaintiff." *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987)(citing C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3533 (2d ed. 1984)). Thus, as the claims of all Plaintiffs, named and unnamed, have been addressed by the actions of DDS as outlined in the affidavit, the case is moot and should be dismissed.

B.Standards for Dismissal for Failure to State a Claim

Should this Court find the claims asserted in the Complaint are not moot, this Court should still dismiss the Complaint for failure to state a claim.  Viewing the allegations as true, a dismissal for failure to state a claim is appropriate if the facts as pleaded fail to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).  The "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (brackets omitted). Despite the fact that a complaint need not contain detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

> 1. Plaintiffs have failed to State a Claim Under the Supremacy Clause: DDS's use of the guidelines provided in the Real ID Act for issuance of licenses does not violate the Supremacy Clause and is not preempted by federal law.
>
>    a. The Supremacy Clause itself does not provide a cause of action

Plaintiffs allege a cause of action under 42 U.S.C. § 1983 for violation of the Supremacy Clause, but no such "cause of action" exists.  The Supremacy Clause does not create a source of rights under § 1983 and is not individually enforceable under federal law.  *See Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct.

1378, 1383 (2015)(holding that the respondent was "incorrect" in asserting that the Supremacy Clause created a cause of action for its violation). The intent of Congress is presumed to be deference to states; the Supreme Court has held "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005). The Supremacy Clause is to be used sparingly, only where "the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained." *De Canas v. Bica,* 424 U.S. 351, 356 (1975). Thus, unless a federal statute or regulation expressly forbids state involvement, use or intervention, the Supremacy Clause does not preempt the states' regulatory powers. *Id.*

    Thus, in order to make a claim on this ground, Plaintiffs must allege facts that show, express or implied, that DDS's failure to issue driver's licenses to applicants who present Employment Authorization Documents and receipts for pending applications to adjust status improperly preempts federal law. This they have not done, nor can they do, as the issuance of an EAD expressly does not convey any benefit to the holder beyond the ability to work, and federal law does not mandate issuance of driver's licenses to anyone.

b. Express Preemption is not applicable

Clearly, Plaintiffs cannot be alleging express preemption, as the Real ID Act specifically leaves the issuance and determination of qualifications for driver's licenses to the states. 6 C.F.R. § 37.11 et seq.; *see generally English v. General Elec. Co.*, 496 U.S. 72 (1990); *Fahy v. Comm'r*, 2006 U.S. Dist. LEXIS 18170 (Dist. N.H.) States may choose not to follow and comply with the Real ID Act; the consequence of such choice is that the IDs and driver's licenses issued by a non-compliant state are not valid for federal purposes, such as boarding an aircraft. 6 C.F.R. §37.65. Thus, the regulation is wholly permissive, and not mandatory, and therefore express preemption is not applicable.

c. Implied Preemption is not applicable

i. Field preemption does not apply.

Plaintiffs instead appear to be relying on implied preemption, either field preemption or conflict preemption. Field preemption would not appear to apply in this case, as Plaintiffs would need to show that the federal regulatory scheme is so pervasive as to "occupy the field" in that area of law such that Congress never intended the state to supplement it. *See Gade v. National Solid Wastes Mgmt. Ass'n.*, 505 U.S. 88 (1992). With regard to immigration, DDS agrees that the power to regulate immigration itself is unquestionably exclusively a federal power. But immigration is not equivalent to the issuance of driver's licenses; "'regulation

of immigration'… 'is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain.'" *Hispanic Int. Coalition of Alabama v. Bentley*, 2011 U.S. Dist. LEXIS 137846 (N.D. Ala.)(citing *De Canas*, 424 U.S. at 353-354). The *Bentley* court further held that the power of Congress is **not** usurped, even where local regulations may actually impact immigration; those local impacts **do not** equate to a constitutionally impermissible regulation of immigration. *Id.* Simply because the DDS policy may relate to or have an impact on illegal immigration does not mean that field preemption applies. *Id.*

ii.   Conflict preemption does not apply.

Conflict preemption also fails as it is certainly possible to comply with both the federal Real ID Act and with the DDS policy as alleged by Plaintiffs, and the DDS policy is not an unconstitutional obstacle to federal law. The Eleventh Circuit has held the Real ID Act "does not purport to comprehensively regulate driver's licenses, identification cards, and unlawfully present aliens. Rather it leaves the field essentially open, giving room for the states to adopt different policies concerning this subject." *United State of America v. State of Alabama*, 691 F.3d 1269, 1299 (11th Cir. 2012). Other courts have held that Real ID does not require a state to issue licenses, but rather sets **minimum** standards for issuance if a state chooses to avail itself of Real ID. See *Saldana v. Lahm*, 2013

U.S. Dist. LEXIS 148209 (D. Neb.); *Fahy*, *supra*; *Cubas v. Martinez*, 33 A.D.3d 96 (N.Y. 2006); *State v. Ramos*, 993 So. 2d 281 (La. App. 2008). The district court in Nebraska held

> "nothing in the [Real ID] Act requires states to issue driver's licenses to anyone. The Act simply sets minimum standards for the issuance of state driver's licenses and state identification cards, if such licenses and cards are to be accepted for federal use. Nothing in the Act prevents states from imposing standards or requirements that exceed those set out in the Act."

*Saldana*, 2103 U.S. Dist. LEXIS 148209 at 15.

The Real ID Act specifically states that the presentation of an EAD is not sufficient alone for a state driver's license agency to issue a Real ID Act compliant license to that applicant; subsection (g) requires that the EAD applicant provide a second document from subsection (c). DDS's policy, that makes use of and complies with the Real ID Act, is not in conflict with or preempted by federal law; states are permitted to use federal tools to exercise their authority, in this case to issue driver's licenses. And 6 C.F.R. § 37.3 states that licenses should only be issued to those "lawfully admitted." Following federal law and guidelines of how to issue federally accepted licenses does not equal an unauthorized exercise of federal power that is subject to preemption. *See Bentley*, 2011 U.S. Dist. LEXIS 137846, at 62-67. Thus, without showing field or conflict preemption, Plaintiffs have failed to state a claim under the Supremacy Clause.

2. <u>Plaintiffs have Failed to State a Claim under the Equal Protection Clause</u>

    a. <u>Standard for Equal Protection Claims</u>

In order to make a claim for equal protection, Plaintiffs must show they are similarly situated to another group of persons and are being treated differently than those persons by the government. *Hernandez v. Fla. Dep't of Corr.*, 281 Fed. Appx. 862 (11th Cir. 2008). Where the challenged classification neither burdens a fundamental right nor targets a suspect class, the state need only demonstrate a legitimate state interest in treating the two groups of people differently. *See Lofton v. Sec'y of the Dep't of Children and Family Serv.s*, 358 F.3d 804 (11th Cir. 2004). In this case, Plaintiffs have not shown that they are similarly situated to other EAD holders, or even other category "c" EAD holders, that they are a part of a suspect class, or that they have a fundamental right at stake.

    b. <u>Plaintiffs have failed to allege they are similarly situated to other EAD holders</u>

Plaintiffs' equal protection claim fails because they have failed to show they are similarly situated to EAD holders of other classes who they claim are sometimes receiving licenses. 8 C.F.R. § 274a.12 provides for over sixty (60) classes of Employment Authorization Documents, including twenty-six (26) "c" classifications. Plaintiffs fail to allege how they are similar to the other fifty-eight plus (58+) classes of EAD holders, or even to the other twenty-four (24) class (c)

EAD holders. Considering the lengths to which Congress went to distinguish between the classes and categories, it stands to reason that each EAD is issued for a different reason, purpose, and on a different basis. Thus, Plaintiffs' EADs issued pursuant to 8 C.F.R. § 274a.12 (c)(9) or (c)(10) are different and distinguishable from those issued in other categories. For example, class (c)(1) is for an alien spouse who presents an endorsement from an authorized representative of the Department of State. Some class "c" categories do not even involve immigrants. For example, class (c)(3) is for nonimmigrant students and class (c)(21) is for nonimmigrant witnesses or informants. The only thing class "c" EAD holders have in common is that it is required that they must apply for an EAD to be granted one, and that an EAD merely confers a right to work and an ability to be hired without the employer facing consequences for so hiring the worker. Thus, Plaintiffs have failed to show they are similarly situated, and their equal protection claim should fail.

    c. <u>Plaintiffs are not part of a suspect class</u>

Even if this Court finds that Plaintiffs have shown they are similarly situated to other EAD holders that they claim are able to obtain licenses from DDS, Plaintiffs cannot show they belong to a suspect class. While national origin is a protected class under the Equal Protection Clause, immigration status is not a protected class. *See e.g. Espinoza Et Vir v. Farah Manufacturing Co., Inc.*, 414

U.S. 86 (1973). Plaintiffs make a mention about alienage in their Complaint, but that is all. Plaintiffs, however, fail to actually assert that claim, and make no mention of alienage in the class description. Doc. 1, *Complaint*, ¶ 151. Without more, this is insufficient to show Plaintiffs are a suspect class. Thus, Plaintiffs' claim for equal protection is not supported by protection as a suspect class.

    d. <u>Plaintiffs do not have a fundamental right to a driver's license</u>

As they are not part of a suspect class, Plaintiffs must claim they are entitled to some undeniable right in order to assert an equal protection claim. *Lofton*, 358 F. 3d at 818. This they cannot do. First, no one is entitled to obtain or be granted a driver's license; it is a privilege, not a right. *See Miller v. Reed,* 176 F.3d 1202 (9th Cir. 1999)(citing *Dixon v. Love*, 431 U.S. 105, 112-16 (1977), which held that possession of a driver's license is not a fundamental right). *Saldana*, supra; *Castillo-Solis v. State*, 292 Ga. 755 (2013); *Nolen v. State*, 218 Ga. App. 819 (1995). Moreover, it is not even a federal privilege, but one granted provisionally and regulated by the individual states, and honored thereafter in the other states via the full faith and credit provision of the Constitution. *See Dixon, supra;* USCS Const. Art. IV, § 1.

Numerous courts have held that denial of a driver's license does not infringe upon a constitutional right. *See LULAC v. Bredesen*, 500 F.3d 523 (6th Cir.

2007)(holding the potential difficulties that may be experienced by one who does not have a driver license to use for identification purposes were held not to implicate the right to travel); *see also Caddell v. Helena Elder Hous., Inc.*, 494 Fed. Appx. 809 (9th Cir. Mont. 2012); *Abuhouran v. SSA*, 291 Fed. Appx. 469 (3d Cir. N.J. 2008). In *Miller v. Reed*, 176 F.3d 1202, 1205-1206 (9th Cir. 1999), the case most often cited by other jurisdictions, the argument that having a driver's license was a fundamental right was rejected. The Ninth Circuit Court of Appeals stated "[w]e have previously held that burdens on a single mode of transportation do not implicate the right to interstate travel.…A rich man can choose to drive a limousine; a poor man may have to walk. The poor man's lack of choice in his mode of travel may be unfortunate, but it is not unconstitutional." *Miller*, 176 F.3d at 1205.[2] The Court explained further

> [t]he plaintiff's argument that the right to operate a motor vehicle is fundamental because of its relation to the fundamental right of interstate travel is **utterly frivolous**. The plaintiff is not being prevented from traveling interstate by public transportation, by common carrier, or in a motor vehicle driven by someone with a license to drive it. What is at issue here is not his right to travel interstate, but his right to operate a motor vehicle on the public

---

[2] The Court's reasoning was primarily based upon the holding of the U.S. Supreme Court in *Dixon v. Love*, 431 U.S. 105 (1977). In that case, the Supreme Court held that a state could summarily suspend or revoke the license of a motorist who had been repeatedly convicted of traffic offenses with due process satisfied by a full administrative hearing available only after the suspension or revocation had taken place; the Supreme Court declined to afford the possession of a driver's license the weight of a fundamental right.

> highways, and we have no hesitation in holding that this is not a fundamental right. **Miller does not have a fundamental 'right to drive.'**

*Id.* at 1206 (emphasis added). Plaintiffs' denial of a driver's license does not impede a constitutional right. Plaintiffs' claims on this ground must fail.

Second, the grant of an EAD confers no other right upon its holder other than the right to seek and accept employment within the United States. *See generally* 8 C.F.R. § 274a.12. Nowhere within the regulation is there anything concerning driver's licenses or any language suggesting a correlation between the grant of an EAD with the issuance of a driver's license, as suggested by Plaintiffs. The grant of an EAD only allows its holder to seek and accept employment, not to be given employment. *See* 8 C.F.R. § 274a.12. There are many hurdles to obtaining employment; the lack of a driver's license is just one such hurdle. It does not prevent someone from seeking employment and thus does not amount to "irreparable harm" under the law. *See Saldana,* 2013 U.S. Dist. LEXIS 148209 at 18-19.

Furthermore, nothing in the Real ID Act purports to **require** issuance of licenses to anyone, much less those unable to present the required documentation. Similarly, nothing in Georgia law requires or demands the issuance of licenses to anyone; the statute is permissive, not mandatory. O.C.G.A. § 40-5-21.1 provides "[n]otwithstanding any other provision of this title, an applicant who presents in

person valid documentary evidence … *may* be issued a temporary license, permit, or special identification card." O.C.G.A. § 40-5-21.1 (emphasis added).  Plaintiffs thus cannot claim that they are being denied any sort of fundamental right by DDS' policy, and their claim should fail.

### III.  CONCLUSION

Based upon the foregoing arguments and citations of authority, Defendant respectfully requests this Court dismiss the Complaint.

Respectfully submitted this 17th day of May, 2016.

>
> SAMUEL S. OLENS            551540
> Attorney General
>
>
> BETH BURTON               027500
> Deputy Attorney General
>
>
> s/Joseph Drolet
> JOSEPH DROLET             231000
> Senior Assistant Attorney General
>
>
> s/Amy Radley_____
> AMY RADLEY                400570
> Assistant Attorney General

Please direct all communications to:
AMY RADLEY
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
(404) 657-3981
aradley@law.ga.gov

CERTIFICATION AS TO FONT

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this document is submitted in Times New Roman 14 point type as required by to N.D. Ga. Local Rule 5.1(b).

This the 17th day of May, 2016.

s/Amy Radley_____  
Assistant Attorney General

CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2016, I electronically filed DEFENDANT BRANTLEY'S BRIEF IN SUPPORT OF ITS PRE-ANSWER MOTION TO DISMISS, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Gillian Gillers
Kristi L. Graunke
Naomi R. Tsu
Southern Poverty Law Center
1989 College Avenue NE
Atlanta, GA 30317

Justin Chaney
1801 Peachtreee St. NW, Ste 110
Atlanta, GA 30309

This the 17th day of May, 2016.

    s/Amy Radley_____
    Assistant Attorney General